FILED
United States Court of Appeals
Tenth Circuit

March 3, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARILYN JOYCE WALLACE,

     Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

     Defendant-Appellee.

No. 09-8048
(D.C. No. 2:08-CV-00156-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

Marilyn Joyce Wallace, proceeding pro se, appeals from the district court's

decision granting summary judgment in favor of the United States of America.[1]

We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    We note that Ms. Wallace was represented by counsel during the proceedings in district court.

## I.  Background

On October 11, 2007, Ms. Wallace filed a complaint against the government in federal district court in the District of Columbia seeking damages for illegal tax collection pursuant to 26 U.S.C. § 7433.  She alleged that from September 25, 2001 until June 2006 the Internal Revenue Service (IRS) levied $945.54 per month from her Michigan State Teacher's Pension, and that a total of $53,895.78 was illegally debited from her pension.  Ms. Wallace admitted in her complaint that she had a tax debt of approximately $10,000 but she alleged that the IRS continued to remove money from her pension well after the correct amount had been levied.

The government filed a motion to dismiss arguing that Ms. Wallace's complaint failed to state a claim for relief under § 7433 because her challenge was to the assessment rather than the collection of her taxes.  Alternatively, the government sought to transfer the case to the District of Wyoming because that was the proper venue for her action.

The district court denied the motion to dismiss but granted the motion to transfer, concluding that it would be in the interests of justice to do so.  As part of its consideration of the propriety of the transfer motion the district court *sua sponte* addressed the question of whether Ms. Wallace had timely filed her complaint.  The court noted that the applicable statute of limitations was two years but that courts varied in their interpretation of the date of accrual of a cause

of action under § 7433 with some courts using the date the levy begins, others using the date the levy is released, and others making a fact-based determination based on reasonable notice. Relying on an unpublished district court case from California, the court ultimately decided to apply a continuing wrong theory, concluding it was most appropriate to use the date the levy ended as the accrual date for Ms. Wallace's claim. Because she had filed suit within two years of that date, and she had sufficiently alleged exhaustion of her administrative remedies, the district court found no procedural obstacles to transferring the case.

Ms. Wallace then filed an amended complaint in the District of Wyoming. The parties engaged in discovery, and the government subsequently filed a motion for summary judgment, arguing primarily that Ms. Wallace's action was barred by the two-year statute of limitations because she had a reasonable opportunity to discover all of the essential elements of a possible cause of action by September 2001—the month the levy began. Alternatively, the government argued that to the extent Ms. Wallace claimed the levy should have ended after payment of the $10,580 she admitted she owed, her right of action accrued on August 23, 2002—the date by which the IRS had collected that amount.

The district court concluded that Ms. Wallace's action was barred by the statute of limitations and she was not entitled to equitable tolling. Ms. Wallace filed a motion for reconsideration, which the district court denied as untimely. Ms. Wallace then filed an appeal. After reviewing the parties' original

submissions on appeal, we ordered supplemental briefing. The parties have filed their supplemental briefs and this case is now ready for disposition.

## II. Discussion

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

### A.

Ms. Wallace initially argues that the government's failure to appeal from the transfer order precluded it from raising the statute of limitations issue in its motion for summary judgment in the District of Wyoming. In support of this argument, Ms. Wallace relies on Rule 4(a) of the Federal Rules of Appellate Procedure, which requires that the government file an appeal within sixty days. But Ms. Wallace fails to recognize that the order granting the transfer motion and denying the motion to dismiss was not a final judgment but was an interlocutory order that was not immediately appealable under 28 U.S.C. § 1291 or § 1292(a).

-4-

Accordingly, the government was not required or authorized to file an appeal from that interlocutory order.

In a companion argument, Ms. Wallace asserts that the law of the case doctrine precluded the district court for the District of Wyoming from revisiting the statute of limitations issue.[2] But "[o]nly final judgments may qualify as law of the case; where a ruling remains subject to reconsideration, the doctrine is inapplicable." *Unioil v. H.E. Elledge* (*In re Unioil*), 962 F.2d 988, 993 (10th Cir. 1992); *United States v. Bettenhausen*, 499 F.2d 1223, 1230 (10th Cir. 1974) ("The rule of the law of the case does not apply unless there is a final judgment that decided the issue."); *see also Langevine v. District of Columbia*, 106 F.3d 1018, 1022-23 (D.C. Cir. 1997) ("Interlocutory orders are not subject to the law of the case doctrine and may always be reconsidered prior to final judgment. This is true even when a case is reassigned to a new judge." (quotations and citations omitted)). As we explained above, the order by the district court for the District of Columbia was not a final judgment but instead was an interlocutory ruling that

---

[2] The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. Accordingly, when a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.

*United States v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998) (quotations and citations omitted).

remained subject to reconsideration. Accordingly, the law of the case doctrine was inapplicable and the district court for the District of Wyoming was free to revisit the statute of limitations issue.

B.

Turning to the merits of the summary judgment motion, Ms. Wallace argues that the government did not meet its burden in showing that there were no genuine issues of material fact, the district court did not view the evidence in the light most favorable to her, and the district court did not properly evaluate the question of when she knew of the essential elements of her claim.[3] Ms. Wallace also argues that the district court erred in rejecting her argument to equitably toll the statute of limitations. We disagree with all of these contentions.

Section 7433 provides a cause of action for civil damages for the unauthorized collection of taxes. A lawsuit alleging a violation of § 7433 must be brought "within two years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3). For the purposes of § 7433, a cause of action accrues when a

---

[3] Ms. Wallace further argues that the district court's decision conflicts with another decision of this court in which we affirmed the dismissal of an earlier complaint she filed because she had failed to exhaust her administrative remedies as required by § 7433. *See Wallace v. United States*, 43 F. App'x 357, 358 (10th Cir. 2002). Ms. Wallace contends that exhaustion of administrative remedies is a component of the essential elements of her claim and therefore she could not have known all of the essential elements of her claim in 2001-2002. But exhaustion of administrative remedies is not an essential element of her claim; rather, it is a statutory prerequisite to filing suit. *See* 26 U.S.C. § 7433(d)(1). Accordingly, there is no conflict between the district court's decision and our earlier decision.

plaintiff "has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 C.F.R. § 301.7433-1(g). Ms. Wallace alleged in her amended complaint that the government illegally removed $945.54 from her pension account each month from September 2001 to June 2006. She asserted that the IRS did not follow the prescribed methods for acquiring her assets because the IRS was not authorized to levy funds from her pension under 26 U.S.C. § 6331(h); the amount removed from her pension exceeded the amount identified in the notice of levy in violation of 26 U.S.C. § 6303; and the levy continued after her obligation was satisfied in violation of 26 U.S.C. § 6331(c).

At her deposition, Ms. Wallace testified as follows: she had notice of the levy before it began; she thought the levy was illegal before it started; she objected to the levy on many occasions during the time the levy was in place; and she could have filed a lawsuit in 2001. The record also shows that she negotiated her monthly pension checks under protest, noting on each check that she was receiving only a partial payment, and tallying the amount outstanding she believed she was owed. Finally, Ms. Wallace kept a contemporaneous log reflecting the date each month when the $945.54 was levied and a running total of the full amount of the levy after each monthly withdrawal.

It is clear from these facts that, as of September 2001, Ms. Wallace knew all of the essential elements of her claim that the IRS was not authorized to levy any money from her. But she contends that she could not have known in September

2001 that the levy would exceed the $10,580 she believed she owed to the IRS or the $11,557.24 reflected in the notices of levy she received. While that may be true, she did know this information as of September 25, 2002, because she noted on her log that the total levy by that date was $12,292.01. Nevertheless, she did not file her complaint until 2007. Accordingly, her claims are time-barred.

Although Ms. Wallace characterizes her arguments as relating to the facts of her case, the crux of her argument is a legal one. She does not argue that she was not aware of the levy. Instead, she argues that the levy, and the resulting monthly deductions from her pension account, constituted a continuing harm that did not cease until May 2006. As a result, she contends her cause of action did not accrue until that time.[4] In support of this position, she relies on the initial decision by the district court for the District of Columbia, which applied a continuing wrong

---

[4]     In a related argument, Ms. Wallace asserts that the district court failed to address her argument that each IRS collection attempt is a new violation that tolls the statute of limitations. In her opposition to summary judgment, she argued that the continuing wrong doctrine should be applied to her claims because the IRS engaged in repeated collection efforts *after the time of the levy* and each collection attempt was a new violation that tolled the statute of limitations. *See* R. Vol. 1 at 603, 606. In support of this statement, she referred to a letter dated December 1, 2008, where the IRS asked for an additional payment of $22.99. *See id*. at 603. Because Ms. Wallace may not use *post-levy* collection attempts to toll the statute of limitations on her claims that the *levy* was illegal and excessive, the district court did not err in failing to address this argument. To the extent she now seeks to argue that assessment and collection attempts *during the time of the levy* constituted new violations that tolled the statute of limitations; this argument was not presented to the district court and we will not consider it for the first time on appeal, *see McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).

theory to allow her claim to accrue when the levy ended in May 2006. But our case law does not support the application of the continuing wrong doctrine to her case.

In *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430-31 (10th Cir. 1996), we reversed and remanded for the district court to consider whether the continuing wrong doctrine should toll the statute of limitations where plaintiff alleged fraud and misrepresentations by the defendant over a number of years that prevented the plaintiff from timely ascertaining the cause of his injury. We explained that

> [u]nder the continuing wrong doctrine, . . . where a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury. In other words, the statute of limitations does not begin to run until the wrong is over and done with.

*Id*. (quotation and citation omitted). But we cautioned that the continuing wrong doctrine does not apply when the injury is "definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." *See id*. at 1431.

In *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1237 (10th Cir. 2001), we rejected application of the continuing wrong doctrine to save plaintiff's lawsuit seeking damages for a back injury. Plaintiff argued he had suffered a continuous injury from the exposure to railroad vibrations during his entire career with the railroad and that therefore his claims did not accrue until his retirement in 1998. But the evidence showed that he had seen a doctor for his back injury in 1995. We therefore affirmed the district court's decision granting

summary judgment in favor of the railroad on statute-of-limitations grounds. *See id.* at 1237-38; *see also United States v. Hess*, 194 F.3d 1164, 1176 (10th Cir. 1999) (holding continuing wrong doctrine inapplicable to case that did not involve "inculpatory parties who fraudulently concealed their conduct so the plaintiffs were prevented from timely coming forward to seek redress").

In light of our precedent, the continuing wrong doctrine is inapplicable to Ms. Wallace's claims. She knew of the government's allegedly illegal and excessive levy on her pension more than two years before she filed suit in October 2007; and, although she has made vague allegations of fraud, she has not alleged that the government fraudulently concealed the levy. *Accord Dziura v. United States*, 168 F.3d 581, 582-83 (1st Cir. 1999) (rejecting application of continuing violation doctrine to § 7433 case where plaintiffs knew of the essential elements of their cause of action more than two years before they filed suit).

Finally, Ms. Wallace challenges the district court's conclusion that her ignorance of the law was insufficient to invoke the protections of equitable tolling. Ms. Wallace now contends she never argued she was ignorant of her rights or the law. Instead, she explains "she simply agreed with the court in *Tenpenny* that she should not be doomed if she lacks 'expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations.'" Aplt. Opening Br. at 19 (quoting *Tenpenny v. United States*, 490 F. Supp. 2d 852, 860-61 (N.D. Ohio 2007)). As a result, she asserts the district court "denied equitable

-10-

tolling on a faulty premise." *Id*. But Ms. Wallace's argument appears to be over the district court's word choice as opposed to its substantive reasoning. "Lacking expertise with regard to knowledge of the admittedly complex regulations governing the statute of limitations" is simply a more sophisticated way of saying that a person is ignorant of the law. In *Tenpenny*, the court acknowledged that "the public is charged with knowledge of the law," but permitted equitable tolling under the unique circumstances in that case because of the possibility that the plaintiff may have been misled by an earlier order of that court. 490 F. Supp. 2d at 860-61. No such unique circumstances exist here, and Ms. Wallace has failed to demonstrate that the district court erred in denying her request for equitable tolling. Accordingly, the district court properly granted summary judgment in favor of the government because Ms. Wallace knew all of the essential elements of her claim but she failed to file her complaint within the two-year statute of limitations.

C.

For her final issue, Ms. Wallace contends the district court erred in denying her motion for reconsideration. In its order, the district court noted that "Federal Rule of Civil Procedure Rule 59(e) requires that, 'A motion to alter or amend a judgment must be filed no later than 10 days after the entry of judgment.'" R. Vol. 2 at 222 (quoting Fed. R. Civ. P. 59(e)). Because Ms. Wallace filed her motion after the ten-day period had expired, the district court denied her motion as

-11-

untimely. On appeal, Ms. Wallace first notes that her attorney was under the mistaken impression that he had twenty days to file the motion. She then argues that the district court could have considered her motion under Federal Rule of Civil Procedure 60(b).

We review the district court's denial of Ms. Wallace's postjudgment motion for an abuse of discretion. *See Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005). The Rules of Civil Procedure do not provide for a general postjudgment "motion for reconsideration." Rather, the rules "provide that a postjudgment motion may arise under either Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason). These two rules serve different purposes and produce different consequences, both substantive and procedural." *Id*. (quotation and alteration omitted). Ms. Wallace's motion asked the district court to reconsider the merits of its decision to grant summary judgment solely based on the statute of limitations. *See* R. Vol. 2 at 196-97. Her brief essentially reiterated the arguments she presented in opposition to summary judgment. Accordingly, the motion sought "reconsideration of matters properly encompassed in a decision on the merits contemplated by Rule 59(e)." *Jennings*, 394 F.3d at 854 (quotation omitted). As a result, the district court was under no obligation to consider the motion under Rule 60(b). *Cf. id*. at 854-855 (noting that a district court's analysis of a postjudgment motion requires a "more nuanced approach" and instructing district courts to evaluate postjudgment motions "based

on the reasons expressed by the movant, not the timing of the motion"). We therefore conclude the district court did not abuse its discretion in construing the motion for reconsideration as a Rule 59(e) motion and denying it as untimely.

<u>III. Conclusion</u>

The judgment of the district court is AFFIRMED.

Entered for the Court


John C. Porfilio
Circuit Judge

-13-